1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

PRIVATE LENDERS GROUP, INC.,

9

Plaintiff,

10

v.

11

DOES 1 - 59,

12

Defendants.

Case No.  C13-0194RAJ-RSL

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE

13

14

15

16

17

18

19

20

21

This action was filed on January 31, 2013.  Each of the Doe defendants is identified only by an IP address linked to the on-line sharing of the movie "After the Wizard."  Plaintiff asserts direct and contributory copyright infringement claims against each Doe defendant.  The Court granted plaintiff's motion to initiate early discovery from internet service providers in order to obtain information sufficient to identify the owner of each IP address.  During the three months that this action was pending, none of the defendants was served, nor did plaintiff amend its complaint to identify any of the Doe defendants.

22

23

24

25

26

On May 14, 2013, the Court issued an order to show cause acknowledging concerns regarding the propriety of joinder and the possibility that plaintiff was using the judicial authority of the United States to wrest improvident settlements from *pro se* litigants under threat of huge statutory penalties.  The Court stayed the above-captioned

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 1

1  matter and required plaintiff to provide copies of all written communications with the

2  owners of the IP addresses and summaries of all oral communications with those

3  individuals.  In addition, the Court ordered plaintiff to show cause why the case should

4  not be dismissed for improper joinder and/or pursuant to the Court's inherent authority to

5  control its docket.  Having reviewed plaintiff's response, the Court finds as follows:

6      **A.  Joinder**

7          Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements

8  for the permissive joinder of defendants.  First, the right to relief against defendants must

9  arise out of "the same transaction, occurrence, or series of transactions or occurrences."

10  Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common

11  to all defendants.  Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of

12  the complaint as true and considering the declarations of plaintiff's investigator, the Court

13  finds that these requirements are easily met.  Plaintiff's investigator found that a user of

14  the IP addresses identified in this action possessed a pirated copy of "After the Wizard,"

15  that each copy was a reproduction of the same original, and that the user offered for

16  download a portion of its pirated copy at the investigator's request, contributing to a

17  fully-playable version of the movie.  Depending on how one characterizes this activity,

18  plaintiff's claims for relief arise from either the same transaction (*i.e.*, its investigator's

19  successful download of a single copy of "After the Wizard") or a related series of

20  transactions (*i.e.*, the incremental downloads of portions of the movie from each identified

21  IP address).  Litigating the case will also involve common questions of fact and/or law

22  regarding the existence of a swarm, the alleged downloads, plaintiff's ownership of the

23  copyright, and the elements of infringement.  The fact that persons associated with the IP

24  addresses may have individual defenses to plaintiff's claims does not change the fact that

25  there will be some common questions of law or fact:  not all of the legal and factual issues

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 2

1   must be identical as to all defendants.  Patrick Collins, Inc. v. Does 1-21, 282 F.R.D. 161,

2   168 (E.D. Mich. 2012).

3   　　　　　　Although the specific requirements of Rule 20 are met, the Court must also

4   determine whether permissive joinder will "comport with the principles of fundamental

5   fairness."  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).  Factors

6   relevant to this determination include the possible prejudice to any party, delay caused by

7   joinder, the motives for joinder, the closeness of the relationship between the joined

8   parties, notice to the parties, and the effect of joinder on jurisdictional issues.  Desert

9   Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980).  In the Ninth

10   Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order

11   to promote trial convenience and to expedite the final determination of disputes, thereby

12   preventing multiple lawsuits."  League to Save Lake Tahoe v. Tahoe Reg'l Planning

13   Agency, 558 F.2d 914, 916-17 (9th Cir. 1977).

14   　　　　　　Jointly litigating the facts related to the swarm plaintiff has identified and

15   the legal issues related to infringement is more efficient for plaintiff and the Court than

16   litigating fifty-nine suits involving only one IP address each.  In addition, the nature of

17   the swarm and the BitTorrent protocol, with its many pieces and multiple sources,

18   suggests that joint litigation may be necessary for plaintiff to substantiate its theory that

19   defendants acted in concert to download copyrighted material, even if the segment

20   downloaded from a particular defendant, considered alone, might not constitute copyright

21   infringement.  Defendants, on the other hand, gain no appreciable advantage through

22   individual litigation:  in either case, defendants will be able to offer individual defenses to

23   the allegations.  Nor does there appear to be any significant risk of liability by

24

25

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 3

1    association.[1]  Jointly litigating these claims also allows defendants, many of whom will

2    undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other

3    defendants, and/or benefit from the participation of retained counsel.  The only potential

4    advantage to severance appears to be the hope that plaintiff will give up its claims, no

5    matter how meritorious, in the face of mounting costs.  If, as the Court is willing to

6    assume at this stage in the proceeding, plaintiff's allegations are true and its copyright has

7    been infringed, such a result is neither just nor fair.

8            The Court further finds that there is no indication that joinder will impact

9    the Court's subject matter jurisdiction and that defendants' alleged participation in a

10    knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint

11    litigation even if defendants remained unaware of the identity of their fellow BitTorrent

12    users.

13            The Court is, however, concerned about the impact that joinder has had on

14    the handling of related litigation and how that handling reflects on plaintiff's motives for

15    amassing the group of defendants in this case.  To be clear, the Court finds that joinder

16    under Rule 20 for purposes of prosecuting copyright infringement claims against

17    members of a swarm in a single lawsuit can be appropriate.  There is no indication,

18    however, that plaintiff was actually prosecuting this action.[2]  Despite receiving

19    identifying information regarding some of the individuals associated with the IP

20

21        [1]  Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May

22    4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be
      prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

23
          [2]  In response to the various orders to show cause issued in this and the related copyright
24    infringement cases, counsel provided virtually identical memoranda and declarations, making it
      impossible to determine exactly what steps plaintiff took to prosecute this particular action or what
25    communications were had with one or more of the Doe defendants in this case.  The Court will therefore
      assume that counsel took the exact same steps and engaged in the same types of communications with
26    regards to all of the pending cases.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 4

1  addresses at issue, plaintiff failed to affect service, asserting that complications in

2  obtaining subscriber information regarding every IP address somehow prevented it from

3  naming any individual defendants.  This approach to litigation has caused delay and raises

4  all sorts of potential for abuse, as discussed more fully below.  In addition, the failure to

5  prosecute the action suggests that the motive for joinder is not to promote the underlying

6  goals of efficiency, justice, and expeditious resolution of the disputes, but rather to use

7  the pendency of this litigation to obtain unilateral discovery regarding non-parties and to

8  push for quick (and potentially unjustified) settlements.

9          In the circumstances of this litigation, the Court finds that joint litigation

10  against numerous participants in a single swarm satisfies the specific requirements of

11  Rule 20(a)(2) but that the joinder has been used to create a procedural imbalance which,

12  left unchecked, would not comport with the principles of fundamental fairness.

13       **B.  Lack of Service**

14          Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120

15  days after the complaint is filed, the court – on motion or on its own after notice to the

16  plaintiff – must dismiss the action without prejudice against that defendant or order that

17  service be made within a specified time."  The time for service has now passed, but

18  plaintiff had a little more than two weeks left on the service clock when the above-

19  captioned matters were stayed.  There is no reason to assume that timely service would

20  have been affected, however.  Three months after this case was filed, no proofs of service

21  were on record (as required by Rule 4(l)), and plaintiff had not moved to amend its

22  complaint to identify any of the Doe defendants.  Given the manner in which counsel

23  prosecuted the R&D Film 1 and Flypaper Distribution cases, it appears that plaintiff

24  intended to pursue discovery and settlement negotiations without serving any defendants.

25          As subscribers became aware of the lawsuit, they predictably began calling

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 5

1   plaintiff's counsel in order to obtain information.  Counsel apparently referred them to a

2   webpage of "Frequently Asked Questions," invited them to prove their innocence, and/or

3   negotiated settlements.  In addition, counsel sent demand letters to a handful of

4   defendants.  Despite the Court's instruction, plaintiff has not provided copies of the

5   demand letters and has not summarized its oral offers of settlement.  The only

6   communications provided for the Court's review are an email transmitting a Settlement &

7   Release Agreement to one of the defendants in this case, a Settlement & Release

8   Agreement with a subscriber related to an IP address in C13-0288JLR-RSL, and a partial

9   Settlement & Release Agreement with a subscriber related to an IP address in C13-

10  0308MJP-RSL.  What preceded the email string and settlement agreements is unknown,

11  and the Court is left to guess regarding the tenor and accuracy of statements made to

12  potential defendants.  The little information available to the Court is not reassuring.

13          Counsel's "educational FAQ website" is found at

14  www.fronteirlawgroup.wordpress.com and attached to this Order as Exhibit A.  The first

15  question is "Why am I being sued?"  Of course, the individual reading the FAQs has not

16  yet been sued, and plaintiff does nothing to clarify the procedural posture of the case.

17  The second question is about the justification for the settlement demand amount, but

18  plaintiff has provided very little information regarding oral or written settlement demands

19  in the above-captioned matters.  The FAQs themselves are silent on this issue, although

20  they do mention the maximum statutory penalties and a $675,000 jury verdict in a

21  copyright infringement action in the District of Massachusetts.  Plaintiff's advice

22  regarding the association of counsel (the court will not appoint counsel in a civil suit) and

23  the validity of possible defenses (failure to password protect and/or monitor the use of

24  your internet connection may constitute negligence) is suspect.  Finally, plaintiff invites

25  the individual reading the FAQs to provide evidence proving that he or she did not

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 6

1 download "After the Wizard."

2      When plaintiff sought permission to conduct discovery in this case, it

3 represented the discovery as both limited and efficacious:  by subpoenaing subscriber

4 identification information from the ISPs, plaintiff would be able to pursue this lawsuit and

5 protect its copyrights.  It turns out, however, that identifying the account holder tells us

6 very little about who actually downloaded "After the Wizard" using that IP address.  As

7 one court noted, "it is no more likely that the subscriber to an IP address carried out a

8 particular computer function . . . than to say an individual who pays the telephone bill

9 made a specific telephone call."  In re BitTorrent Adult Film Copyright Infringement

10 Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012).  In fact, it is less likely.  Home

11 wireless networks are ubiquitous, meaning that a single IP address can simultaneously

12 support multiple computer devices throughout the home and, if not secured, additional

13 devices operated by neighbors or passersby.  Thus, the risk of false positives is very real.

14 Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012).  It is not clear that

15 plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual

16 contentions regarding an internet subscriber's infringing activities based solely on the fact

17 that he or she pays the internet bill.  Plaintiff seems to be aware of this problem and has

18 refrained from identifying the Doe defendants more specifically even after it learns the

19 name of the subscriber.  Plaintiff does not, however, take the appropriate steps of

20 returning to the Court to seek an extension of time in which to serve and permission to

21 conduct additional discovery.  Rather, plaintiff demands that the subscriber prove he or

22 she did not download "After the Wizard."  Therein lies the rub.  Plaintiff has effectively

23 obtained access to unrepresented individuals and parleyed that access into open-ended

24 and unlimited discovery, despite the very narrow discovery order entered by the Court.

25      In this context, the 120-day service deadline is the only thing that limits

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 7

1   plaintiff's unsanctioned discovery expedition.  If plaintiff feels it has enough information

2   to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an

3   IP address, it should serve the complaint and initiate litigation subject to the limitations

4   imposed by the rules of civil procedure.  If, on the other hand, plaintiff would have

5   trouble justifying a factual contention that the internet subscriber must, by virtue of that

6   fact, be the downloader, it could seek an extension of the service deadline, explaining

7   why it was unable to obtain the information in a timely manner and identifying steps to be

8   taken that would allow litigation to begin.  If those steps include additional discovery,

9   further permission of the Court would be necessary.

10           In short, plaintiff must actually prosecute the claims it has asserted.  Instead,

11  plaintiff's litigation strategy seems to be to use the mere pendency of this action to create a

12  period of time in which it can scare subscribers into settlement as the only means of

13  avoiding both litigation costs and harsh statutory penalties.  The limited communications

14  disclosed to the Court show that plaintiff makes every effort to "educate" the subscriber

15  regarding the statutory penalties he or she faces.  Coupled with the clear implication that

16  evidence of IP address ownership is legally sufficient to establish copyright infringement

17  and the demand that the subscriber prove his or her innocence, it is not surprising that

18  subscribers – whether guilty or not – may choose to settle.  While the risk of improvident

19  settlements and overreaching[3] cannot be eradicated, the Court will not allow plaintiff to

20

21          [3]  The settlement agreement filed under seal in this matter raises additional concerns.  The
22  agreement not only specifies the payment amount necessary to obtain a release of the copyright claims
    and the normal trappings of such an agreement, but also includes a unilateral confidentiality provision, a
23  unilateral non-disparagement provision, warranties running from the subscriber to plaintiff, a waiver of
    any right to challenge the validity of the copyright or plaintiff's ownership thereof, a patently false
24  assertion that the parties jointly drafted the agreement, and a questionable declaration of federal
    jurisdiction.  Worse yet, a breach of any of the promises, representations, or warranties on the part of the
25  subscriber will expose him or her to liability for plaintiff's attorney's fees and will resurrect the copyright
    infringement claims, but this time with arguments regarding validity and ownership foreclosed.  This
26  enforcement provision runs only in favor of plaintiff.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 8

1   pick and choose the procedural rules it likes while ignoring deadlines and discovery

2   limitations.  Absent extraordinary and unforeseeable circumstances, the service deadline

3   will be strictly enforced in order to reduce the risk of overreaching.

4

5         For all of the foregoing reasons, the stay of the above-captioned case is

6   hereby lifted and plaintiff may again pursue identifying information regarding the Doe

7   defendants from the ISPs pursuant to the Court's prior discovery order.  Plaintiff shall

8   have sixty days from the date of this Order to complete discovery and affect service.

9   Failure to file proof of service on or before the sixtieth day will result in the dismissal of

10  plaintiff's claims as to each unserved defendant.  The Court takes under advisement

11  plaintiff's failure to provide complete information regarding communications with

12  subscribers.

13

          Dated this 7th day of August, 2013.

14

15                                    _____
                                      Robert S. Lasnik
16                                    United States District Judge

17

18

19

20

21

22

23

24

25

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 9